UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **Christopher Brindley,**<br><br>　　Plaintiff<br><br>v.<br><br>**Boston Gas Company, dba, National Grid, Narragansett Electric Company, dba, Rhode Island Energy,**<br><br>　　Defendants. | **Verified Complaint and Jury Demand** |

**NATURE OF THE CASE**

　　For nineteen years, Christopher Brindley ("Mr. Brindley" or "Plaintiff") has been a customer of Boston Gas Company, dba, National Grid ("National Grid"). Mr. Brindley opened this account in Brockton, Massachusetts, where he and his wife reside. In or about June, 2022, Mr. Brindley began receiving collection calls from National Grid for an unpaid "second" account in Westerly, Rhode Island. This second account was opened with Narragansett Electric Company, dba, Rhode Island Electric ("RIE"). Mr. Brindley would learn from a Defendant's agent that the second account was for service provided to an RIE customer whose name was similar to his - a Christopher Brindle.

　　Mr. Brindley would provide the Defendants with the irrefutable proof they requested of him to verify his identity. This included filing a police report in which the Defendants required Mr. Brindley to allege identity theft. However, even after receiving all the documentation they required Mr. Brindley give them, the Defendants failed to conduct a genuine and reasonable investigation into Mr. Brindley's disputes that he ever opened the

1

second account. The Defendants would refuse to correct their records. Instead, the Defendants would furnish Mr. Brindley's credit report with derogatory and negative entries for a balance he did not owe. The Defendants also caused their agents to make repeated, harassing telephone calls to Mr. Brindley to collect the false debt. As a result of the Defendants' misconduct, Mr. Brindley's credit report also has been negatively impacted. Mr. Brindley's personal information was consequently exposed on the "dark web" for purchase. Mr. Brindley now files suit against the Defendants for violation of 15 U.S.C. §§1681p, 1692(k)(d), negligence, and violation of G.L. c. 93 and G.L. c. 93A.

## JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681p, 1692(k)(d) and 28 U.S.C. §§ 1331 and 1337, and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

2. Venue in this District is proper in that Plaintiff's claim arose in this District.

## PARTIES

3. Plaintiff Christopher Brindley (herein "Mr. Brindley" and "Plaintiff") is a natural person residing in Brockton, Plymouth County, Massachusetts.

4. Defendant Boston Gas Company, dba, National Grid, ("Boston Gas") is a Massachusetts Corporation, having its principal office at 170 Data Drive, Waltham, MA 02451. The Registered Agent for Boston Gas, according to the Secretary of Commonwealth of Massachusetts Business Entity Summary, is Corporation Service Company, 84 State Street, Boston, MA 02109. Defendant is a furnisher of credit information as that term is used by the FCRA.

5. Defendant Narragansett Electric Company, dba, Rhode Island Energy, ("RIE") is a Rhode Island corporation, having its principal office at 280 Melrose Street, Providence, RI, 02907.  The Registered Agent for RIE is CT Corporation System, located at 450 Veterans Memorial Parkway, Suite 7A, in East Providence, RI  02914.  Defendant is a furnisher of credit information as that term is used by the FCRA.

**FACTS**

6. In or about April, 2022, Mr. Brindley began receiving automated telephone calls from National Grid regarding an alleged unpaid balance.

7. In each of his return telephone calls with a National Grid agent regarding this unpaid balance, Mr. Brindley would provide the caller with his personal information.  This included his home address in Brockton, Massachusetts and corresponding account number, to prove the unpaid account was not his.

8. Upon receiving Mr. Brindley information, the National Grid employee would agree that Mr. Brindley's account was indeed current, with a $0.00 balance.

9. Mr. Brindley subsequently received repeated telephone calls from National Grid concerning this alleged unpaid balance.  He called on at least four different occasions to correct their record.

10. On or about December 8, 2022, a National Grid employee again telephoned Mr. Brindley about the same alleged delinquent account.

11. During this call, Mr. Brindley provided additional his identifying information to prove the unpaid account was not his.

12. This National Grid agent subsequently stated that her search using Mr. Brindley's

telephone number and social security number indicated there was a "second" service account at a Rhode Island address under Mr. Brindley's name.

13. Mr. Brindley informed the National Grid employee that he had never lived in Rhode Island and had never opened this second account. He also informed National Grid that he never gave it permission to open this second service account.

14. The National Grid employee advised they would email Mr. Brindley a National Grid's "Final Bill Dispute" form ("Dispute Form") to contest the second account.

15. The customer representative instructed Mr. Brindley to dispute the second account on an allegation of identity fraud when he completed the Dispute Form. This National Grid employee also emailed Mr. Brindley a copy of the bill/account in dispute. He was instructed to include the bill with the completed Dispute Form.

16. Pursuant to the National Grid employee's instructions, Mr. Brindley completed the Dispute Form to contest the second service account under his name as fraudulent. Pursuant to the form, National Grid required Mr. Brindley to provide "proof of residency" and a police report alleging the theft of his identity (collectively "Supporting Documents"). **Exhibit A.**

17. On December 9, 2022, Mr. Brindley filed a police report with the Brockton Police Department stating that an unauthorized account was opened in his name with Rhode Island Energy.

18. On December 12, 2022, Mr. Brindley submitted the completed Dispute Form, proof of residency and the police report online to National Grid.

19. Mr. Brindley received an email from National Grid acknowledging its receipt of his

completed Dispute Form.   **Exhibit B.**

20. On December 14, 2022, Mr. Brindley learned that National Grid was unable to locate his Dispute Form.  He re-emailed the same.

21. Pursuant to National Grid's instructions, Mr. Brindley also mailed his completed Dispute Form and Supporting Documents by certified mail to the RIE Fraud Office.

22. Mr. Brindley continued receiving collection calls from National Grid and/or its agents.

23. On or about April 3, 2023, Mr. Brindley's consumer credit report was furnished with negative entries relating to the National Grid second service account. Additionally, these entries do not show this alleged debt as disputed.

24. On April 14, 2023, after being contacted by the collection agency, Allied Accounts, about the unpaid National Grid balance for the second service account, Mr. Brindley emailed the Dispute Form (containing his social security number) and Supporting Documents to this agency.

25. On December 26, 2023, Mr. Brindley was contacted by National Recovery Agency, another collection agency, which required him to email it the police report.

26. From May 29, 2024, through August 1, 2024, Mr. Brindley has received at least 20 phone calls from Stellar Recovery, also a collection agency, which is known to collect debts on behalf of the Defendants.  Mr. Brindley has received an additional 100 calls from unknown callers, an unprecedented number of telephone solicitations given that he is on a "do not call" list.

27. Upon information and belief, these calls are from third-party purchasers of the

"second" service the Defendants improperly opened using Mr. Brindley's name and social security number.

28. On June 14, 2024, Mr. Brindley spoke with an RIE employee who stated the second service account was still in Mr. Brindley's name. This employee also stated that it was apparent that a "rep error" had been made in connection with this second service account. This employee offered to email Mr. Brindley documentation to resolve the issue. However, no such correspondence was ever sent.

29. On July 15, 2024, Mr. Brindley sent National Grid a demand for settlement pursuant to Massachusetts Consumer Protection Act, G.L. 93A ("93A Demand Letter"). **Exhibit C.** National Grid failed to make a reasonable offer of settlement in response. **Exhibit D.**

30. On or about August 20, 2024, Mr. Brindley sent RIE a demand for settlement pursuant to MGL c. 93A. **Exhibit E.** RIE failed to make a reasonable settlement offer in response. **Exhibit F.**

31. Mr. Brindley's credit score has been negatively impacted by the derogatory reporting the Defendants caused to be wrongfully furnished to the credit bureaus concerning the unpaid second service account the Defendants improperly created in Mr. Brindley's name. A credit report service has alerted Mr. Brindley that following the wrongful reporting of his personal information to the credit bureau(s), his social security number was "compromised" made available on the "dark web" and that a "breach" occurred in connection with his personal information.

**Count I**
**(FCRA – 15 U.S.C. § 1681n)**

32. Plaintiff realleges paragraphs 1-31 as if fully set forth herein.

6

33. The Defendants negligently failed to comply with the requirements imposed under FCRA 15 U.S.C. §1681 et seq., including but not limited to failing to comply with the duties of furnishers of credit information as set forth in 15 U.S.C. §1681s-2(b), as described above.

34. As a result of the Defendants' violations of the FCRA, Mr. Brindley has suffered, continues to suffer and will suffer future damages, including damage to reputation, worry, distress, frustration, embarrassment, and humiliation, all to his damages, in an amount to be determined by the jury.

35. Mr. Brindley is entitled to actual damages.

36. Mr. Brindley is entitled to reasonable attorney fees pursuant to 15 U.S.C. § 1608o(a).

## Count II
### (FCRA – 15 U.S.C. § 1681o)

37. Plaintiff realleges paragraphs 1-36 as if fully set forth herein.

38. The Defendants negligently failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to failing with the duties of furnishers of credit information as set forth in 15 U.S.C. § 1681s-2(b), as described above.

39. As a result of the Defendants' violations of FCRA, Mr. Brindley has suffered, continues to suffer and will suffer future damages, including damage to reputation, worry, distress, frustration, embarrassment, and humiliation, all to his damages, in an amount to be determined by the jury.

40. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

41. Plaintiff is entitled to reasonable attorney fees, pursuant to 15 U.S.C. § 1681o(a).

## Count III
### Negligence
### (Boston Gas Co/National Grid)

42. The Plaintiff realleges paragraphs 1-41 as if fully set forth herein.

43. Defendant National Grid, owed Mr. Brindley a duty, or obligation, as its customer.

44. The Defendant knew or should have known of RIE's unauthorized acquisition of Mr. Brindley's personal information.

45. RIE's used Mr. Brindley's personal information in an unauthorized manner.

46. The Defendant never notified Mr. Brindley of this breach of security, which resulted in RIE obtaining Mr. Brindley's information, including his social security number.

47. There is a reasonably close causal connection between the Defendant's misconduct and resulting injury to Mr. Brindley.  Defendant's conduct caused Mr. Brindley's social security number and other personal information to be obtained by unauthorized third parties.  These include collection agencies to which the Defendants made public or caused to be made public Mr. Brindley's social security number.

48. Defendants' conduct is responsible for the stress Mr. Brindley has experienced from the numerous collection calls to him and resulting harassment.

49. There were damages to Mr. Brindley, which resulted from Defendant's breach of its statutory duties.  Among other harmful effects, the damages consisted of the negative impact to his credit report, the invasion of his privacy, and obtaining counsel.

## Count IV
### Consumer Protection Act M.G.L. c. 93A
### (Boston Gas Co./National Grid)

50. Mr. Brindley realleges paragraphs 1-49 as if fully set forth herein.

51. The Defendants are engaged in commerce in Massachusetts by, among other things, providing utility services and collecting customers' account receivables.

52. Mr. Brindley is entitled to bring action under M.G.L. c. 93A, § 9.

53. The Defendants engaged in unfair or deceptive acts or practices with respect to Mr. Brindley in violation of the Massachusetts Consumer Protection Act.

54. Mr. Brindley mailed a written demand letter to National Grid on July 15, 2024, reasonably describing the unfair or deceptive acts or practices, as well as the injury suffered, pursuant to M.G.L. c. 93A, § 9, asking for compliance with its duties and a reasonable offer of settlement. **Exhibit C.**

55. National Grid failed to make a reasonable settlement offer in response. **Exhibit D.**

56. National Grid's actions constitute unfair and deceptive trade practices in violation of M.G.L. c. 93A.

57. Mr. Brindley has been damaged by National Grid's actions, including but not limited to: invasion of his privacy, damage to his credit, and caused him to incur legal costs and fees in his attempt to get National Grid to correct its records in connection with the false debt about which Mr. Brindley received repeated dunning collection calls and was furnished to Mr. Brindley's credit report.

### Count V
### Consumer Protection Act M.G.L. c. 93A
### (RIE)

58. Mr. Brindley realleges paragraphs 1-57 as if fully set forth herein.

59. Rhode Island Energy (RIE) is engaged in commerce in Massachusetts by, among other things, collecting debts.

60. Mr. Brindley is entitled to bring an action under M.G.L. c. 93A, §9.

61. RIE engaged in unfair or deceptive acts or practices with respect to Mr. Brindley in violation of the Massachusetts Consumer Protection Act.

62. RIE failed to implement reasonable procedures to ensure that information it reported about Mr. Brindley to consumer reporting agencies.  This failure violates M.G.L. c. 93, §54A.

63. Pursuant to M.G.L. c. 93, §68, "[f]ailure to comply with the provisions of sections fifty through sixty-seven [of c. 93] shall constitute an unfair trade practice under the provisions of clause (a) of section two of chapter ninety-three A."

64. Mr. Brindley mailed a written demand letter to RIE on August 20, 2024, reasonably describing the unfair or deceptive acts or practices, as well as the injury suffered, pursuant to M.G.L. c. 93A, §9, asking for compliance with its duties and a reasonable offer of settlement.

65. RIE failed to make a reasonable settlement offer in response. **Exhibit F.**

66. RIE's actions constitute unfair and deceptive trade practices in violation of M.G.L. c. 93A.

67. Mr. Brindley has been damaged by RIE's actions, including but not limited to: the invasion of his privacy, damage to his credit, and caused him to incur legal costs and fees in his attempt to get RIE to correct its records in connection with the false debt about which Mr. Brindley received repeated dunning collection calls and was furnished to Mr. Brindley's credit report.

**PRAYER**

WHEREFORE, plaintiff, Christopher Brindley, prays for a judgment as follows:

1. On Plaintiff's First Count for willful violations of FRCA against the Defendants:
    a. Actual damages in an amount to be determined by the jury.
    b. Punitive damages in an amount to be determined by the jury.
    c. Statutory damages as determined by the Court: and
    d. Attorney fees and costs.

2. On Plaintiff's Second Count for negligent violation of the FRACA against the Defendants:
    a. Actual damages in an amount to be determined by the jury:
    b. Statutory damages as determined by the Court; and
    c. Attorney fees and costs.

3. On Plaintiff's Third Count for negligence against the Defendants:
    a. Actual damages in an amount to be determined by the jury;
    b. Credit monitoring for the Plaintiff;
    c. Defendants remove Plaintiff's social security from its record and utilize his license number instead for identification purposes;
    d. Defendants provide an identity recovery plan; and
    e. Attorney fees and costs.

4. On Plaintiff's Fourth Count for unfair and deceptive practices pursuant to M.G.L. c. 93A, §9 against National Grid:
    a. Actual damages in an amount to be determined by the jury.
    b. Triple damages in an amount to be determined by the jury; and
    c. Equitable relief.

5. On Plaintiff's Fifth Count for unfair and deceptive practices pursuant to M.G.L. c. 93A, §9 against Rhode Island Energy:
    a. Actual damages in an amount to be determined by the jury.
    b. Triple damages in an amount to be determined by the jury; and
    c. Equitable relief.

6. On all Counts, costs, and expenses incurred in this action.

7. All other relief that he may be entitled to at law or in equity.

8. Plaintiff demands a jury trial on all counts.

Dated: October 26, 2024

Respectfully submitted,

Christopher Brindley,

By his attorney,

/s/ Nadine Champagne
Nadine Champagne
Law Office of Nadine Champagne
749 South Street
Roslindale, MA  02131
617-475-5204
nadine@nadinechampagnelaw.com

I, Christopher Brindley, do hereby verify that I am familiar with the facts stated within the foregoing Complaint and state that the facts stated therein are true and accurate to the best of my information and belief.

Christopher Brindley